[Civ. No. 14370. Third Dist. July 3, 1974.]

ANTHONY AUDISIO, Cross-complainant and Respondent, v.
EARL W. RUSSELL, as Administrator, etc.,
Cross-defendant and Appellant.

**COUNSEL**

L. Archie Harris and Nathaniel S. Colley for Cross-defendant and Appellant.

Granucci, Berger & Granucci and Robert J. Granucci for Cross-complainant and Respondent.

## OPINION

**PARAS, J.**—Mary Frances Audisio, plaintiff, petitioner, cross-defendant, and appellant (hereinafter "wife"), and Anthony Audisio, defendant, cross-complainant, and respondent (hereinafter "husband"), were married on June 14, 1969. On November 14, 1969, wife filed a complaint for annulment based on alleged fraud of husband. On December 9, 1969, husband filed an answer denying fraud and cross-complained for annulment based on alleged fraud of wife. He added four more causes of action to his cross-complaint, seeking first, to recover moneys transferred to wife as a result of her alleged undue influence, breach of trust and breach of confidential relationship; second, to impose a constructive trust upon real property owned by wife; third, for moneys had and received by wife for the use and benefit of husband; and fourth, to recover moneys allegedly loaned by husband to wife. Wife filed an answer to the cross-complaint on December 31, 1969, essentially denying the allegations of the cross-complaint. This set of pleadings was filed prior to the effective date of the Family Law Act.

On February 26, 1970, wife moved for leave to file an amended petition for nullity or in the alternative, dissolution of the marriage; and also a motion to strike the cross-complaint. The motion to strike was denied and the motion for leave to file the amended petition was granted. At the same time, on its own motion the court made an order severing the issues in the second, third, fourth, and fifth causes of action of the cross-complaint for separate trial.

Trial on the issues raised by the petition and the first cause of action of the cross-complaint (which now had become the "response"), was set for July 30, 1970. On June 19, 1970 a motion to consolidate all causes of action for trial was filed by husband and denied. Trial proceeded as scheduled and on September 15, 1970, an interlocutory judgment of dissolution of marriage on wife's amended petition was entered, the court having denied to both parties a judgment of nullity. No formal findings of fact and conclusions of law were demanded or filed. A final judgment of dissolution was entered on April 8, 1971. Neither the interlocutory nor the final judgment of dissolution makes any reference whatever to the unresolved causes of action on the cross-complaint; on their face the judgments appear to be routine dispositions of a proceeding for dissolution of marriage without community property or minor children, and for nothing else.

Thereafter the wife died and on August 2, 1971, an order was made substituting the administrator of the deceased wife, Earl W. Russell, in

her place (for purpose of simplicity the term "wife" shall continue to be used hereafter to designate both the wife and her estate).

On September 24, 1971, wife filed a motion for summary judgment based upon the claim that the unresolved causes of action in the cross-complaint were barred by the doctrine of res judicata. This motion was denied on October 7, 1971. Finally, by stipulation of counsel, the unresolved causes of action of the cross-complaint were submitted to the court on the reporter's transcript of the testimony taken at the July 30, 1970 trial. This resulted in a judgment on the severed causes of action on April 18, 1973, awarding husband the sum of $26,800 against wife. Findings of fact and conclusions of law were filed. This appeal was then prosecuted, wife attacking the money judgment on three grounds:

1. That the denial of the decree of nullity in the first trial was res judicata on the issue of fraud so as to prevent a later trial and judgment based upon fraud.

2. That both trials should have been determined in a single proceeding.

3. That the one judgment rule requiring that all issues be resolved by a single judgment was violated; accordingly, the second judgment is a nullity.

## I

As demonstrated by the trial court's findings of fact, the $26,800 money judgment is based upon the following: On July 16, 1968, 11 months prior to the marriage of the parties, husband loaned to wife $10,000 upon her express representation (which was false and made without any intention of performing) that she would repay this sum to husband along with interest equivalent to what he was receiving on the money when it was on deposit at a savings and loan association. Neither this sum nor any portion thereof was ever repaid by wife.

On April 21, 1969, husband delivered to wife $15,003.71 in cash which he withdrew from two savings and loan association accounts. This sum was transferred on wife's express representation that she would use it to pay off an indebtedness on certain real property owned by her and standing of record solely in her name and would convey a half interest therein to husband. This she never intended to do, and has neither transferred any interest in the property to husband nor repaid him any part of the $15,003.71.

During the marriage, wife persuaded husband to withdraw $3,000 from a savings and loan association account which was used by the parties (along with a trade-in automobile owned by wife and $500 cash of her separate funds) to purchase a 1969 Buick automobile having a value of $3,600. By reason of these circumstances husband was vested with an undivided one-half interest in said automobile as tenant in common; and since the wife presumably possessed the automobile, husband was entitled to one-half the value thereof or $1,800.

Thus the three sums of $10,000, $15,000 (rounded off from $15,003.71) and $1,800, comprise the total of $26,800 in the money judgment.

Wife's argument respecting res judicata addresses itself to the fact that the first judgment dissolving the marriage recites that "there has not been a showing of fraud by the parties on either side." The cross-complaint for annulment alleged that the wife induced the husband to marry for the purpose of fraudulently obtaining from him the same moneys which are involved in the last four causes of action of the cross-complaint. She argues that since such fraud was found not to exist, the issue of fraud was settled and could not later form the basis of a judgment for the moneys involved.

This argument ignores the findings of fact, which are unchallenged. Assuming that the money judgment is not supported by any fraud on the part of wife, it nonetheless is more than supported by equitable principles involving the money had and received count of the cross-complaint. Even without fraud it remains undisputed that the husband gave to the wife $10,000 on one occasion and $15,000 on another occasion, with the expectation that the money would be repaid or consideration given for it. The findings of fact completely negate the existence of a gift on either occasion. The lack of repayment and the failure of consideration thus support the $25,000 portion of the money judgment. Similar principles support the award of $1,800. The trial court found that husband had an undivided one-half interest in the $3,600 automobile in the possession of wife. It follows therefore that one-half of the value should be paid by wife to husband.

The fraud conclusions of the court lend nothing more to the money judgment. No punitive damages were awarded. No general damages were found or assessed. The trial court did nothing more than to assess the principal amounts transferred without even adding interest thereon from the date of the transfer to the date of the judgment.

It follows therefore on equitable principles alone that the judgment not only is supported, but is compelled by the findings of fact. The issue of fraud is thus a meaningless issue.

## II

Wife's second contention is somewhat confusing. The caption states "although case law recitations seem to recognize a concept of bifurcated fraud in litigation involving nullity of marriage and fraudulent obtaining of property, the entire question must be determined in a single proceeding." For this contention there is no authority cited, and we frankly don't understand it.

The body of the argument following this caption, however, appears to deal with cases such as *Schaub* v. *Schaub* (1945) 71 Cal.App.2d 467 [162 P.2d 966]. Wife argues that in all cases which involved a claim of fraud in connection with annulment of the marriage and concurrently a claim of fraud in connection with the transfer of property, either fraud was found to exist in both claims or found not to exist in both claims. This is of no significance here in view of our conclusion that the judgment for moneys is supported and mandated by the findings of fact, irrespective of fraud.

## III

Wife's last contention involves the application of the one judgment rule. She in effect maintains that since the court rendered one judgment dissolving the marriage which on its face is a complete judgment disposing of the marital issue, the one judgment rule prevents a later valid judgment in the same action.

Under the facts of this case this argument is unavailing. The Family Law Act (Civ. Code, § 4000 et seq.) became effective on January 1, 1970. Special rules in aid of the new act were adopted by the Judicial Council (Cal. Rules of Court, rules 1201 to 1290 incl.) effective the same day. Transitional rule 1260, subdivision (b) reads in part as follows: "Notwithstanding any other rule in this chapter, if an action or proceeding otherwise subject to the rules in this chapter states a cause of action . . . against a party . . . which, but for this subdivision, . . . under the rules in this division, would not be permitted if the action had been commenced after January 1, 1970, . . . insofar as such action or proceeding

states such other cause of action . . . against a party . . . , it shall be governed by the law applicable to civil actions generally in all respects and as to all matters *as if a separate action or proceeding had been filed in the first instance without regard to the claim for relief governed by the rules in this division* . . . ." (Italics added.)

In *Nicholson* v. *Henderson* (1944) 25 Cal.2d 375 [153 P.2d 945], the court recognized at least two exceptions to the one judgment rule. Another exception obviously results from the collective application of the Family Law Act and rule 1260, subdivision (b). Since the matter contained in the second, third, fourth, and fifth causes of action of the cross-complaint necessarily would not be permitted after January 1, 1970, in a domestic relations matter, it would have to be treated "as if a separate action or proceeding had been filed in the first instance. . . ." Such being the case, as a matter of practicality the one judgment rule must yield and the separate judgment on the four causes of action of the cross-complaint must be permitted to stand.

The judgment is affirmed.

Richardson, P. J., and Friedman, J., concurred.